# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RAJHEE WILLACY,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: DLB-21-3162 |
| **BALTIMORE POLICE DEPARTMENT,** | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Rajhee Willacy, an African-American man of Jamaican national origin, filed a three-count complaint against the Baltimore Police Department ("BPD") in which he alleges BPD discriminated against him based on his national origin and race and retaliated against him after he protested racially-charged comments made to him during an interview. ECF 1. BPD has moved to dismiss the complaint pursuant to Rule 12(b)(6) or, alternatively, for summary judgment under Rule 56. ECF 12. The motion is ripe for disposition. ECF 15, 17. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons set forth in this memorandum opinion, BPD's motion to dismiss is granted.

**I.      Background**

On October 21, 2020, Rajhee Willacy applied to become a police officer trainee with the BPD. ECF 1, ¶¶ 2, 10. He alleges he was eligible and qualified for the position. *Id.* ¶ 10. As part of the application process, he disclosed his race as African-American and his national origin as Jamaican. *Id.* ¶ 11.

After Willacy applied, BPD's Detective Abraham Velez informed him that he was scheduled for an in-person interview on November 9, 2020, and a polygraph test on November 10, 2020. *Id.* ¶ 12. During the interview with Detective Velez, Willacy "disclosed to [him] some

minor domestic incidents reports" in which he had been involved. *Id.* ¶ 13. In response to this disclosure, Detective Velez said, "[A]re you sure you never hit her," "[Y]ou should have been arrested," "[M]aybe you were arrested, and the record is sealed," and "[B]ased on my experience in law enforcement, most Jamaican men, not all, have trouble with domestic violence." *Id.* During the interview, Willacy "protested" Detective Velez's characterization that the minor incidents were criminal and his remark that most Jamaican men have trouble with domestic violence. *Id.* ¶ 14.

The day after the interview, Willacy took the polygraph test. *Id.* He was not told the results of the test and "instead was told to wait to hear from [BPD]." *Id.* In addition to the interview and polygraph, the recruitment process included a "background profile review for compliance, [a] review of all original documents, [a] Social Media investigation," and his "signed Offer of Employment." *Id.* ¶ 15. Willacy successfully completed these recruitment components. *Id.*

Ten days later, on November 20, BPD communicated its determination that Willacy "[did] not meet [the] agency's requirements for the position." *Id.* ¶ 16. The shortcomings of Willacy's application, according to this communication, were his employment history, criminal history/criminal activity, and failure to successfully complete the required components of the background investigation process. *Id.* BPD advised Willacy that it is unable to disclose the specific information that led to its determination. *Id.* Willacy alleges that BPD continues to recruit others to become police officer trainees. *Id.* ¶ 17.

Willacy alleges BPD denied him the position because of racial and national origin bias against him. *Id.* ¶¶ 20, 25. He alleges BPD had actual and/or constructive knowledge of the discriminatory treatment, failed to take prompt and adequate remedial action, or condoned it. *Id.* ¶¶ 22, 27. He also claims his "protest" of Detective Velez's remarks that most Jamaican men have

trouble with domestic violence constitutes protected activity. *Id.* ¶ 30. Because of this "protest," he alleges BPD rejected his application. *Id.* ¶ 31.

On or around December 23, 2020, Willacy filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 9. On August 31, 2021, the EEOC found "No Probable Cause" as to Willacy's charge. *Id.* He timely filed this national origin and race discrimination and retaliation lawsuit for alleged violations of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e – 2000e-17, and 42 U.S.C. § 1981. ECF 1. BPD has moved to dismiss the complaint pursuant to Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. ECF 12.

## II.     Standard of Review

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, --- F.4th ----, 2022 WL 3364824, at *3, *13 (4th Cir. Aug. 16, 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). On a Rule 12(b)(6) motion, the Court does not "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when deciding a 12(b)(6) motion. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). Here, BPD attached Willacy's EEOC charge of discrimination to its motion to dismiss, ECF 12-2, and the Court may consider it because it is integral to and expressly relied on in the complaint. *See* ECF 1, ¶ 9.

BPD styles its motion as one under Rule 12(b)(6) or, in the alternative, under Rule 56. This "implicates the Court's discretion under Rule 12(d)." *Jackson v. Sagal*, 370 F. Supp. 3d 592, 598 (D. Md. 2019) (citing *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012)). When the Court considers matters

4

outside the pleadings on a Rule 12(b)(6) motion, it must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "The Court 'has complete discretion to determine whether . . . to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Jackson*, 370 F. Supp. 3d at 598 (quoting *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.))).

The Court declines BPD's invitation to convert its motion to dismiss into a motion for summary judgment because the Court need not consider any documents submitted by either side, other than the EEOC charge, to decide the pending motion.

### III. Discussion

#### A. Disparate Treatment

In Counts I and II, Willacy alleges BPD's decision not to hire him was because of his national origin and race. Pursuant to Title VII, it is

> an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1).

To survive a motion to dismiss a Title VII employment discrimination claim, a plaintiff must "allege facts to satisfy the elements of a cause of action created by that statute." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2014)), *cert. denied*, 141 S. Ct. 1376 (2021). The plaintiff in a Title VII disparate treatment case bears the burden of proving the defendant

5

discriminated against him "because of a protected characteristic." *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298 (4th Cir. 1998) (citing *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 243 (4th Cir. 1982)).  This requires "supporting evidence through one of two methods: (1) 'direct or circumstantial evidence' that discrimination motivated the employer's adverse employment decision, or (2) the *McDonnell Douglas* 'pretext framework' that requires the plaintiff to show that the employer's stated permissible reason for taking an adverse employment action 'is actually pretext for discrimination.'"  *Bing*, 959 F.3d at 616 n.8 (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), *and Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).

Willacy argues that Detective Velez's statement that most Jamaican men have problems with domestic violence is evidence of direct discrimination.  ECF 15-1, at 4–5.  "Direct evidence is evidence from which no inference is required."  *Holley v. N.C. Dept. of Admin., N.C.*, 846 F. Supp. 2d 416, 427 (E.D.N.C. 2012); *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020) ("Direct evidence[,] . . . if believed, proves the existence of a fact without inference or presumption.").  It "encompasses 'conduct or statements' that both (1) 'reflect directly the alleged discriminatory attitude,' and (2) 'bear directly on the contested employment decision.'"  *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (quoting *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (internal quotation marks omitted)).  Statements bear directly on employment decisions when they clearly connect a protected trait to the reason the employer acted.  *Warch*, 435 F.3d at 520 ("Even if there is a statement that reflects a discriminatory attitude, it must have a nexus with the adverse employment action.").  For example, an executive's statements that women cannot do warehouse work and that "it would be a good idea to get the females 'out of

6

here'" before he instructed a manager to discharge a female employee was direct evidence of discrimination. *EEOC v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 584, 587 (D. Md. 2014). Conversely, a decisionmaker's statement that "there comes a time when we have to make way for younger people" was not direct evidence of age discrimination. *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994).

Willacy argues that no inference is required to show that Velez's remarks during the interview were directly related to the decision to deny him the position of police officer trainee. The Court disagrees. Detective Velez's statements occurred before Willacy took a polygraph, before his background check was complete, and two weeks before BPD decided not to hire him. Moreover, Willacy does not allege Velez made the hiring decision. The reasons BPD gave for not hiring him—his criminal history, employment history, and failure to pass a background check— undermine his allegation that any racial animus reflected in his interviewer's comments was a reason he was not hired. Willacy has not alleged, and the Court cannot plausibly infer, that Velez's statements, even if believed, bore directly on the decision not to hire him. *See Taylor*, 193 F.3d at 232. Willacy does not plausibly allege a direct discrimination claim.

Willacy also argues he has alleged an indirect discrimination claim. An indirect employment discrimination claim is subject to the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249–50 (4th Cir. 2015). Under that framework, the prima facie case of discrimination consists of four elements: "(1) he belonged to a protected class; (2) he applied for, and was qualified for, a job for which the employer was seeking applicants; (3) he was rejected despite his qualifications; and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination]." *Danial v. Morgan State Univ.*, 426 F. Supp. 3d 135, 143–44 (D. Md.

7

2019); *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012); *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 544–45 (4th Cir. 2003). "'[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination' under the [*McDonnell Douglas*] evidentiary framework . . . to withstand a motion to dismiss." *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022) (quoting *Swierkiewicz v. Sorema*, 534 U.S. 506, 510–11 (2002)); *McCleary-Evans*, 780 F.3d at 585. Nonetheless, the allegations must be plausible and include "facts to satisfy the elements of a cause of action created by the relevant statute." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017); *see also Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Focusing on the second *McDonnell Douglas* factor, BPD argues Willacy has not adequately alleged he was qualified for the position. The Court agrees. Willacy makes only a conclusory allegation that he was qualified to be a BPD police officer trainee. Conclusory allegations are insufficient to withstand a motion to dismiss. *Sheppard*, 993 F.3d at 234. And the specific allegations he does make undermine his belief that he was qualified. Willacy admits he disclosed to BPD "some minor domestic incidents reports." Further, BPD's reasons for denying him the position—his employment history, his criminal history/activity, and his failure to complete a background investigation—indicate he was unqualified. Willacy alleges he has no criminal history, but he does not allege his employment history or how it qualified him for the position. Nor does he allege that he should have successfully completed the background investigation process, including passing the polygraph test. He has not sufficiently pled he was qualified for the position.

Because Willacy has not plausibly stated a claim for national origin or race discrimination, Counts I and II are dismissed.

## B. Retaliation

Willacy alleges BPD retaliated against him by refusing to hire him for the position of police officer trainee after he "protested" Detective Velez's statement during the interview. BPD argues Willacy's retaliation claim should be dismissed because he failed to exhaust his administrative remedies as to that claim. ECF 12-1, at 11–13.

Claims brought under Title VII are subject to an administrative exhaustion requirement. *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1850–51 (2019); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005). "Before a Title VII plaintiff can bring formal suit, he must file an administrative charge with the [EEOC]." *Chacko*, 429 F.3d at 506. This requirement "ensures that the employer is put on notice of the alleged violations, thereby giving it a chance to address the alleged discrimination prior to litigation." *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (discussing the ADA and noting the ADA follows Title VII's enforcement procedures). "[S]o long as 'a plaintiff's claims in [his] judicial complaint are reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation,' [he] 'may advance such claims in [his] subsequent civil suit." *Id.* at 594. Where claims asserted in the EEOC charge are different from those asserted in the complaint, the previously unidentified claims are unexhausted. *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir 2002).

In Willacy's EEOC charge of discrimination, he alleged he was harassed and denied employment, and he checked the boxes for race and national origin discrimination. He did not check the "retaliation" box or mention his "protest" of Velez's comments in the charge's narrative. And, a reasonable investigation into the facts alleged in the EEOC charge would not have revealed a claim of retaliation. "To establish a prima facie claim of retaliation, a plaintiff must show: (1) that he engaged in protected activity, (2) that the employer took a materially adverse action against

9

him[,] and (3) there is a causal connection between the protected activity and the adverse action." *McIver v. Bridgestone Americas, Inc.*, --- F.4th ----, 2022 WL 3036053, at *8 (4th Cir. Aug. 2, 2022) (quoting *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019)). Protected activity "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (quoting *Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). The "oppositional activity must be directed 'to an unlawful employment practice'" or to employment actions the individual "reasonably believes to be unlawful." *Id.* (quoting *Boyer-Liberto v. Fontainebleu Corp.*, 786 F.3d 264, 282 (4th Cir. 2015)). The decisionmaker must have known "not only . . . that the activity occurred, but also . . . that the employee engaged in the protected activity *because* the employee had a reasonable belief that a Title VII violation occurred." *McIver*, 2022 WL 3036053, at *9 (citing *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021)).

If, during the EEOC investigation into Willacy's discriminatory harassment and hiring claims, Willacy revealed what he alleges in his complaint, it was not reasonable to expect a retaliation claim to follow from the administrative investigation. Willacy does not specify what he said in response to Velez's comments that he believed constituted a "protest." Nor does he allege that he reported Velez's remarks to a superior, that the person who made the hiring decision knew about the comments, or that the comments were the reason he was not hired. Even if he had alleged those things, Willacy has not alleged it was reasonable for him to believe that Velez's remarks violated the law. Although he makes conclusory allegations that he reasonably believed he engaged in protected activity by protesting Velez's statements, he alleges no specific facts from which the Court could plausibly infer that Willacy—an interviewee not yet employed by BPD—

reasonably believed Velez's statements during a job interview amounted to a hostile work environment. It was not reasonable for him, as an interviewee, to believe remarks by an interviewer, even if racially hostile, could give rise to a hostile work environment claim. *See Moore v. Pa. Dep't of Military & Veterans Affairs*, 216 F. Supp. 2d 446, 449 (E.D. Pa. 2002) (dismissing interviewee-plaintiff's hostile work environment claim "because plaintiff was not at the time of the alleged assault an employee and thus could not have been exposed to a hostile workplace"); *see also Alwine v. Buzas*, 89 F. App'x 196, 203 n.6 (10th Cir. 2004) (questioning whether a job applicant could state a hostile work environment claim based solely on conduct that occurred during an interview). Even if the statements had been made in the workplace or a hostile work environment claim could arise without an employee-employer relationship, it was unreasonable for Willacy to believe that Velez's one-time comment that some Jamaican men are prone to violence—made after Willacy admitted he had been involved in some domestic violence incidents—would create a hostile work environment. *See Boyer-Liberto*, 786 F.3d at 272 (noting "offhand comments" and "isolated incidents" do not amount to discrimination). Because Willacy did not engage in protected activity, a retaliation claim was not expected to follow from a reasonable administrative investigation.

Willacy's retaliation claim based on his alleged protest of Velez's statement was not administratively exhausted. *See, e.g.*, *Bryant*, 288 F.3d at 132–33 (finding sex discrimination claim not exhausted where only race discrimination was alleged in the charge). The claim is dismissed with prejudice because amendment would be futile. *See Cuffee v. Verizon Commc'ns*, 755 F. Supp. 2d 672, 677–78 (D. Md. 2010) (noting futility of amendment as to unexhausted claims).

11

### C. Section 1981 Claims

BPD also moves to dismiss the § 1981 claims because that statute does not permit suits against state actors; a § 1981 claim brought through 42 U.S.C. § 1983 cannot proceed on the respondeat superior theory of liability; and § 1981 does not create a cause of action based on national origin discrimination. Willacy did not oppose these arguments. Many courts, including this Court, "have recognized the general principle that a party who fails to address an issue has conceded the issue." *Kinetic Concepts, Inc. v. Convatec Inc.*, No. 08-CV-918 (LPA), 2010 WL 1667285, at *8 (M.D. N.C. Apr. 23, 2010) (collecting cases); *see also Camper v. Nat'l Sec. Agency*, No. PWG-18-1794, 2019 WL 3841940, at *5 (D. Md. Aug. 15, 2019); *Muhammad v. Maryland*, No. ELH-11-3761, 2012 WL 987309, at *1 n.3 (D. Md. Mar. 20, 2012); *Grinage v. Myland Pharm., Inc.*, 840 F. Supp. 2d 862, 867 n.2 (D. Md. 2011). Because Willacy did not respond to the arguments for dismissal of his § 1981 claims, the Court treats those claims as abandoned and dismisses them.

### IV. Conclusion

Willacy has failed to plead any facts that would plausibly state a claim for discrimination under Title VII or § 1981. Counts I, II, and III are dismissed. A separate Order follows.

Deborah L. Boardman
United States District Judge